# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 20, 2000 Session

## STATE OF TENNESSEE v. BRENTOL CALVIN JAMES

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 96-C-1737      Seth Norman, Judge**

---

### No. M1999-02533-CCA-R3-CD - Filed November 30, 2000

---

The appellant, Brentol Calvin James, was convicted by a jury in the Davidson County Criminal Court of one count of possession of a weapon during the commission of an offense, a class E felony. The trial court sentenced the appellant, as a Range I offender, to a one-year sentence of incarceration in the Davidson County Workhouse. The appellant raises the following issue for our review: whether the trial court erred in allowing a verdict to stand when there was insufficient evidence, as a matter of law, to support the conviction. Upon review of the record and the parties' briefs, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES, and JOE G. RILEY, JJ., joined.

V. Michael Fox, Nashville, Tennessee, for the appellant, Brentol Calvin James.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On May 3, 1996, pursuant to an informant's tip, the Metropolitan Nashville police had Century Motors, a business owned by the appellant, Brentol Calvin James, under surveillance.[1] The police suspected that person(s) on the premises were selling marijuana. Sergeant James McWright, a narcotics officer with the Metro Police Department, set up surveillance at the rear of

---

[1] In the record, the appellant's name is spelled as "Brentol" and as "Brentnol." However, as is the custom of this court, we have used the spelling contained in the charging instrument. See State v. McCamey, No. 03C01-9601-CC-00037, 1997 WL 55935, at *4 n. 1 (Tenn. Crim. App. at Knoxville, February 12, 1997). Additionally, we note that the record refers to the appellant's business as "Century Motors" and as "Sentry Motors."

Century Motors.[2] He observed the appellant casually wandering around the premises. Sgt. McWright also witnessed Luis Rodriguez, one of the appellant's co-defendants, repeatedly enter a Toyota van and a Dodge van, depositing and removing garbage bags and boxes of unidentified material. Subsequently, two men driving a Honda arrived at the location and talked with Ramiro Torres, another co-defendant. Rodriguez gave Torres a bag from the Toyota van. Torres tossed the bag into the Honda. After the men left Century Motors, police stopped the Honda and discovered that the bag Torres had thrown into the vehicle contained three pounds of marijuana.

Additionally, Officer Phillip Andrew Wright of the Metro Police Department watched the front of Century Motors. He observed Arnold James meet with Michael Richardson. Richardson entered Century Motors and thirty minutes later came back out. Richardson looked around to see if he was being watched. He then gestured to James to come out of the building. James headed towards Richardson's car carrying a box. Furthermore, Sgt. McWright had earlier observed James remove a box from the Toyota van. The police moved in and executed a search warrant on the premises. They discovered that the box carried by James contained five pounds of marijuana. This incident provided the basis for count one of the indictment.

During the execution of the search warrant, the police discovered fourteen one-pound bags of marijuana in the Toyota van. Additionally, the police found $9,190 in a trash bag in the Dodge van and $4,750 in a jacket in the workshop of Century Motors. However, the police were unable to determine the ownership of the vans or the jacket. Moreover, the police unearthed zip-lock bags, garbage bags, and scales in the junkyard next-door to Century Motors, at the same location in the junkyard that the police had observed Rodriguez repeatedly visit. No drugs were found inside Century Motors. The discovery of these drugs in the Toyota van was the basis for count two of the indictment.

Before the police raided Century Motors, the appellant and Rodriguez left to meet Steve Hoak, an individual who was working with the police to catch the appellant in the act of selling drugs. The police had previously arrested Hoak for possession of thirty pounds of marijuana. Hoak agreed to assist the police in catching his supplier, the appellant. Subsequently, the police and Hoak devised a plan to obtain evidence of the appellant's drug activities. Hoak was to meet with the appellant and request an additional fifteen pounds of marijuana to sell in order to recoup the lost profits on the thirty pounds of marijuana previously confiscated by the police. The police wired Hoak for sound and made an audio tape of the meeting between Hoak and the appellant.

The appellant and Rodriguez arrived at Hoak's place of business to discuss the sale. The appellant and Hoak did the majority of the talking. The appellant told Hoak that a person would be stupid to give Hoak additional drugs after Hoak had lost the first batch. Hoak asserted that he lost the thirty pounds of marijuana because the drugs were confiscated by the police when he was arrested. However, the appellant did not believe that Hoak had been arrested. Hoak maintained that

---

[2]The transcript of the trial also refers to Sgt. McWright as "Sgt. McBride." It is the understanding of this court that they are one and the same.

he had papers at his house to prove that he had been arrested. The appellant instructed Hoak to get the papers but informed Hoak that he did not think he could get more drugs for Hoak. Hoak told the appellant that he would get the papers and meet the appellant again in two hours after Hoak picked up his daughter. The appellant became angry and broke off Hoak's truck key in the ignition. Hoak became concerned about the appellant's anger and stated on the audio tape of the conversation, "that [guy] wants to shoot [me]." Moments later, Hoak said that something needed to be done because the appellant was going for his gun. As a result, the police moved in. The police discovered a loaded Star .9 mm automatic pistol underneath a shirt located behind the driver's seat of the appellant's car. However, none of the officers observed the appellant moving toward his car where the gun was located. Additionally, the police saw the appellant standing beside Hoak's truck when they arrived on the scene. There was testimony to suggest that Rodriguez was bending toward the car. These facts constituted the basis for count four of the indictment.

The appellant was tried in the Davidson County Criminal Court on counts one, two, and four of the indictment. Count one of the indictment charged the appellant with delivery of not less than one-half ounce nor more than ten pounds of marijuana. Count two of the indictment charged the appellant with possession of not less than ten pounds nor more than seventy pounds of marijuana with the intent to deliver. Count four of the indictment charged the appellant with possession of a pistol with the intent to employ it in the commission of or escape from an offense. The jury acquitted the appellant of counts one and two but found the appellant guilty of possessing a weapon during the commission of an offense. The trial court sentenced the appellant, as a Range I offender, to a one-year sentence of incarceration in the Davidson County Workhouse. The appellant raises the following issue for our review: whether the trial court erred in allowing a verdict to stand when there was insufficient evidence, as a matter of law, to support the convictions.

## II. Analysis

The appellant argues that there was insufficient evidence produced at trial to prove that the appellant committed an offense; accordingly, the State failed to prove an essential element of the possession of a weapon offense. Initially, we note that the State concedes that the evidence is insufficient to convict the appellant of unlawful possession of a weapon during the commission of an offense and asks that this court reverse the judgment of the trial court. On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the trier of fact, and not this court, will resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Accordingly, this court gives considerable weight to a jury verdict in a criminal trial because a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Therefore, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. To this end, the appellant must establish that no "reasonable trier of fact" could have found the

essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

In order to sustain a conviction for possession of a weapon during the commission of an offense, the State needed to prove that the appellant possessed a deadly weapon and the appellant possessed the deadly weapon with the intent to employ it in the commission of or escape from an offense. Tenn. Code Ann. § 39-17-1307(c)(1)(1997). Furthermore, a deadly weapon can be a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tenn. Code Ann. § 39-11-106(a)(5)(1997). Accordingly, a pistol is a deadly weapon. Additionally, this court has stated that "'[p]ossession" may be actual or constructive." State v. Pittman, No. M1999-00320-CCA-R3-CD, 2000 WL 374755, at *3 (Tenn. Crim. App. at Nashville, April 7, 2000), perm. app. dismissed, (Tenn. 2000). Constructive possession is essentially the ability to reduce an object to actual possession. Id. There is no dispute that the pistol was located in the appellant's car. Furthermore, the appellant possessed the keys to his car and could obtain actual possession of the pistol at any time. Accordingly, the State proved that the appellant possessed the deadly weapon. However, the appellant argues that the State failed to prove the remaining elements of the offense. The State concedes that the evidence was insufficient to convict the appellant of possession of a deadly weapon during the commission of or escape from an offense. We agree that the evidence is insufficient to support the appellant's conviction.

In order to convict the appellant, the State additionally had to prove that the appellant possessed the weapon with the intent to employ it in the commission of, or escape from, an offense. The appellant committed no offense while talking with Hoak. While the appellant may have implicated himself in prior drug activity, the appellant repeatedly refused to supply Hoak with any more marijuana on the occasion in question. There was no exchange of drugs or money relating to a drug deal. Additionally, the sole evidence of the appellant's "intent to employ" was the testimony of Officer Danny Eddings stating that Rodriguez was bent over into the appellant's car when the police approached. Accordingly, the State failed to prove that the appellant possessed the pistol with the intent to employ it during the commission of or escape from an offense.

### III. Conclusion

Based upon the foregoing, we reverse the appellant's conviction of possessing a weapon during the commission of an offense and vacate the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-4-